**PENLLYN GREENE ASSOCIATES, L.P. and The Nolen Group, Inc.**

**v.**

**Randall CLOUSER & John Schwarzenbach**

**Appeal of Randall Clouser.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2005.

Decided Dec. 28, 2005.

Robert J. Sugarman, Philadelphia, for appellants.

Daniel R. Utain, Blue Bell, for appellees.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge McGINLEY.

Randall Clouser, John Schwarzenbach and Lawrencine Mazzoli (collectively Residents) appeal from the order of the Court of Common Pleas of Montgomery County (trial court) which denied them immunity from civil liability for abuse of process,

tortious interference with contract, and trespass, under § 8302(a) of The Participation in Environmental Law or Regulation Act (Act), 27 Pa.C.S. § 8301– § 8305.[1]

Penllyn Green Associates and the Nolen Group, Inc (Developers) are two developers in the process of building a housing development on 13 acres (Property) in Lower Gwynedd Township, Montgomery County, Pennsylvania. Developers purchased the Property with the intent to construct residential homes. The Residents, whose homes are located adjacent or nearly adjacent to the Property, objected to and publicly opposed Developers' efforts to develop the Property.

Developers initially planned to build single family homes, and in October of 1999 filed a subdivision application seeking approval from the Lower Gwynedd Township Board of Supervisors (Board) to subdivide the Property into 27 single family residential building lots. On December 29, 2000, at the suggestion of the Township, the Developers requested a change of zoning classification of the Property to permit the construction of attached carriage homes in four-unit clusters. On May 7, 2000, the Board held a public meeting to discuss Developers' zoning change application and subdivision application. Residents appeared and publicly opposed Developers' applications. On May 7, 2000, the Board approved the Developers' zoning change application and preliminary plan of the subdivision application over the objections of Residents. Residents did not challenge or appeal the Board's decision.

By letter dated May 25, 2001, the Department of Environmental Protection (DEP) approved Developers' remediation of the Property and issued final certification that the Property attained Statewide Health Standards pursuant to the Land Recycling and Environmental Remediation Standards Act, 35 P.S. § 6026.101– § 6026.907 (commonly referred to as "Act 2").[2] Letter to Michael Nolen from Pennsylvania Department of Environmental Protection, May 25, 2001, at 1; Reproduced Record (R.R.) at 245a.

On September 17, 2001, Developers filed a conditional use application seeking permission to construct 36 carriage homes on the Property. On December 18, 2001, the Township convened a public hearing. Residents appeared and publicly opposed the conditional use application. On February 9, 2002, the Board granted approval of Developer's conditional use application over the objections of Residents. Developers filed development plans which were approved pursuant to Resolution # 2002–8, and construction began.

---

1. The legislature in 2000 enacted the Act to empower citizens to bring a swift end to retaliatory lawsuits seeking to undermine citizen participation in the establishment of State and local environmental policy and in the implementation and enforcement of environmental law and regulations. H.B. No. 393, 184th Reg. Sess (2000). The Act employs a number of mechanisms to protect the rights of those providing information to the government, including a special motion to determine the preliminary issue of immunity, a hearing on the motion, an interlocutory appeal of right to the Commonwealth court, and a stay of discovery proceedings pending the motion's disposition. *See* 27 Pa.C.S. § 8303.

Residents refer to the lawsuit brought against them by Developers as a SLAPP suit and refer to the Act as an "anti-SLAPP" statute. The acronym "SLAPP" stands for "Strategic Lawsuit Against Public Participation." The General Assembly declared in the preamble of the Act that "[i]t is contrary to the public interest to allow [SLAPP] lawsuits ... to be brought primarily to chill the valid exercise by citizens of their constitutional right to freedom of speech and to petition the government for the redress of grievances." H.B. No. 393, 184th Reg. Sess. (2000).

2. Act of May 19, 1995, P.L. 4, *as amended.*

On July 24, 2002, Residents filed a land use appeal in the Montgomery County Court of Common Pleas and alleged that they were never notified of the Board's February 9, 2002, decision to grant Developers' conditional use application. Residents asserted that the Property lacked sufficient frontage and access; that the development would create unsustainable traffic conditions; and that the development was or was "likely" contaminated with dioxin related and other noxious offensive and/or hazardous elements and development of the Property would create adverse environmental and health consequences by disturbing and disbursing deadly contaminants, contrary to Section 1298.07(h) of the Lower Gwynedd Zoning Ordinance. Land Use Appeal, July 24, 2002, at 2–3; Reproduced Record (R.R.) at 7a–8a. The trial court granted Developers' motion to quash the appeal as untimely.[3]

On December 5, 2002, nineteen months after the Township enacted the Resolution, Residents appealed to the zoning hearing board for Lower Gwynedd Township (ZHB) and sought to overturn the zoning officer's issuance of building permits and challenged the validity of the zoning change application. The ZHB scheduled a hearing to adjudicate Residents' zoning appeal. Residents requested a continuance and the hearing was continued until March 6, 2003. On March 6, 2003, Residents withdrew their zoning appeal three hours before the hearing was scheduled to begin.

A. *Developers' Complaint against Residents*

On July 31, 2003, Developers filed a three-count Complaint against Residents asserting (1) abuse of process, (2) tortious interference with contract, and (3) trespass. Developers' complaint was limited to Residents' conduct which took place since the enactment of the Resolution in 2002.

i. *Abuse of Process*

Developers' claim for abuse of process was based on Residents' pursuit of an allegedly baseless zoning appeal which was withdrawn three hours before the hearing was scheduled to take place, and Residents' untimely land use appeal which was filed on July 24, 2002. Developers further alleged that Residents filed their procedurally improper land use and the zoning appeals for the sole purpose of harassing Developers and to stall development of the Property.

ii. *Tortious Interference with Contract*

Developers' claim for tortious interference with contract was based on actions undertaken by Residents after construction began that were allegedly designed to deter potential homebuyers and delay construction. According to the Complaint, Residents interfered with the construction by removing survey stakes at the site and falsely representing to real estate brokers, potential homebuyers and news agencies that the Property was contaminated by "dioxin", "agent orange" and other chemicals in order to dissuade potential homebuyers from purchasing a home at the Property. Developers also alleged that Residents took other steps to delay construction such as: cursing at and making obscene gestures to the workers and potential homebuyers, preventing Developers' subcontractors from driving their trucks down the street by parking their

---

**3.** Residents subsequently appealed the trial court's order. A panel of this Court affirmed the trial court's dismissal of Residents' appeal as untimely in an opinion filed at No. 351 CD 2005 on August 18, 2005.

cars in the road and lying in front of the construction vehicles, and making false reports to police that subcontractors' trucks were parked illegally or improperly covered.[4]

### B. *Residents' Preliminary Objections*

■■■ Residents filed Preliminary Objections to Developers' Complaint alleging that they were immune from suit because they were exercising their First Amendment Rights under the Noerr–Pennington doctrine[5] and that the Complaint failed to set forth a cause of action for abuse of process, trespass and tortious interference with contract. On November 13, 2003, the trial court granted Developers twenty

days to amend their Complaint, but denied Resident's remaining objections regarding immunity and the Noerr–Pennington doctrine. Developers filed an Amended Complaint on December 2, 2003, which Residents answered on December 22, 2003.

### C. *Residents' Motion for Hearing to Determine Immunity' Pursuant to Participation in Environmental Law or Regulation Act*

■■■ On June 8, 2004, Residents filed a "Motion for Hearing to Determine Immunity" pursuant to the Act, and asked the trial court to declare them immune from civil liability[6] as a result of their actions in pursuing environmental enforce-

---

**4.** Developers' trespass claim was based on allegations that Residents threw rocks at and damaged Developers' signs advertising the development, entered the Property without permission and took unauthorized photos of the construction process, and removed survey stakes from the Property.

**5.** Pursuant to the Noerr–Pennington Doctrine, an individual is immune from liability for exercising his First Amendment right to petition the government. The Noerr–Pennington Doctrine originated with the United States Supreme Court's decisions in *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657, 669–70, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In recognition that the "right of petition is one of the freedoms protected by the Bill of Rights," the U.S. Supreme Court held that individuals and organizations are immune from liability under anti-trust laws for actions constituting petitions to the government. *Noerr*, 365 U.S. at 138, 81 S.Ct. 523. Over the years, courts have extended this immunity doctrine, referred to as the Noerr–Pennington Doctrine, to protect political activity against tort claims. *NAACP v. Clairborne Hardware Co.*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (First Amendment protected against a civil conspiracy claim by white merchants whose businesses were being boycotted); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839

F.2d 155 (3d Cir.1988) (defendants were immune from conspiracy liability for damages resulting from inducing official action to decertify a nursing home).

The sole exception to the Noerr–Pennington Doctrine is the "sham exception" under which a defendant will not be protected if he is simply using the petition process as a means of harassment. *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382, (1991). "A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all, not one who genuinely seeks to achieve his governmental result, but does so through improper means." *Id.* Therefore, under the "sham" exception, an individual will be liable if he "use[s] the governmental process—as opposed to the outcome of that process—as [a] ... weapon." *Id. See e.g. Wawa, Inc. v. Litwornia, et al.*, 817 A.2d 543 (Pa.Super.2003). (dissemination of false information aimed at interfering directly with the business relationships of a competitor triggered "sham" exception to the Noerr–Pennington Doctrine).

**6.** Although it is not clear from Residents' motion, it is apparent based on the transcript of arguments and briefs, Residents did not take the position before the trial court that they are immune from liability under the Act for the conduct set forth in Developers' trespass count.

ment.[7] Residents claimed that Developers' lawsuit was not a "good-faith" suit for damages, but rather was a SLAPP suit to punish them and deter them from expressing their concerns about the environmental condition of the Property. Residents claim that they began voicing their concerns to the local, state and federal government in the 1980's regarding the possibility of the adverse effects of developing the Property which they asserted was contaminated. Residents argue that their land use and zoning appeals, and their statements made to the real estate brokers, media and prospective homebuyers were just a "continuation" of their longstanding and continuing governmental petitioning and as such they should be immune from liability under the Act. Specifically, Residents asserted they were immune from liability for abuse of process because their land use and zoning appeals

were "action[s] in the courts of this Commonwealth to enforce an environmental law or regulation." 27 Pa.C.S. § 8304. They asserted they were immune from liability for tortious interference with contract because the alleged oral communications were made "in connection with" their land use and zoning appeals which were "under consideration." 27 Pa.C.S. § 8301.

A hearing was commenced on September 30, 2004. Residents offered the testimony of Robert L. McQuade (McQuade), a former member of the township planning commission and board of supervisors, who testified that Residents voiced concerns about the Property back in 1985. Notes of Testimony, (N.T.), September 30, 2004, at 7; R.R. at 174a. Developers' counsel objected to McQuade's testimony on grounds of relevancy. He argued that Residents' conduct prior to the time when Developers

---

**7.** Section 8303 of the Act, 27 Pa.C.S. § 8303, authorizes a person who wishes to raise the defense of immunity from civil liability to file a motion requesting the court to conduct a hearing to determine the issue preliminarily. While the Act clearly contemplates a hearing process where an evidentiary record is established and findings made therefrom, the Act does not provide the standard to be applied by the trial court in deciding the issue.

The hearing procedure under the Act seems to this Court, in the initial phase, similar to a preliminary objection in the nature of a demurrer since it essentially requires the trial court to test the legal sufficiency of the allegations necessary to obtain the claimed immunity. The standard of review for preliminary objections in the nature of a demurrer is limited; the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *MacElree v. Philadelphia Newspapers, Inc.*, 544 Pa. 117, 674 A.2d 1050 (1996) (quoting *AM/PM Franchise v. Atlantic Richfield*, 526 Pa. 110, 584 A.2d 915 (1990)).

In this case, Residents asked the trial court to dismiss the tort claims against them based

on their contention that they are entitled as a matter of law to immunity under the Act. While no hearing procedure under the Act is outlined, immunity is an affirmative defense. Pa.R.C.P. No. 1030. As the moving party, defendants (in this case Residents) have the burden of showing their right to the legislative immunity provided by the Act. Under the Act, a defendant must first assert facts which, if proven, would establish a prima facie case that (1) a challenged cause of action against them arises from protected communications under the Act and, if so, (2) they must show that plaintiff brought the action for the *improper* purpose of deterring or punishing defendants for expressing their environmental concerns as protected by the Act. In this case, the trial court decided as a threshold matter of law that Residents' failed to meet both of these tests.

The impetus of our inquiry on appeal is to determine whether the trial court correctly evaluated the claimed immunity and whether Residents were immune if the facts they alleged were proven. Since this involves an issue of law, this Court's appellate standard of review is plenary and our scope of review is *de novo*. *Straub v. Cherne Industries*, 583 Pa. 608, 880 A.2d 561 (Pa.2005).

first became involved in the project in 1999 was not relevant and clearly was not a basis for Developers' lawsuit. Residents countered that the testimony established that they had "good faith" concerns about the environmental condition of the property that they continually sought governmental review from 1985 to the present. The trial court sustained Developers' objections and held that the proposed testimony regarding Residents' good faith beliefs that the property was contaminated and their prior communications to the DEP and EPA were not germane to the issue of immunity insofar as Developer's complaint was not based on grievances made by Residents to a government agency as defined in 27 Pa.C.S. § 8307, and the alleged activity was not within the purview of the Act.

Based on the pleadings, proposed testimony, legal arguments and on the plain meaning of the Act, the trial court concluded that Residents failed to impugn the motives of Developers in bringing their complaint. Regarding Residents' immunity from liability for tortious interference with contract, the trial court found, as a threshold matter, that Residents' representations to real estate agents, news agencies, and potential homebuyers were not "communications to the government" regarding "enforcement of environmental law or regulation" and, therefore, were not immune from liability under the Act:

> Such actions go far beyond speaking out against the development or expressing concerns about the potential environmental impact of the development.... The [Participation in Environmental Law or Regulation] Act is not intended to be a roadblock or a shield for all those generally unhappy with the prospects of new development. Its sole purpose is to protect those who espouse legitimate environmental concerns. Clearly that is not the case here. Accordingly, Defendants [Residents] should be made to de-

fend themselves against the allegations of [Developers'] Complaint.

Trial Court Opinion, February 25, 2005, at 6–7.

With respect to the Residents' immunity for abuse of process, the trial court made a critical distinction when it found that Residents' land use and zoning appeals were "actions in the courts of this Commonwealth" but they were not brought "to enforce an environmental law or regulation":

> While the Land Use Appeal and the Zoning Appeal, which are the basis of [Developers'] claim of Abuse of Process, do qualify as an 'action in the courts of this Commonwealth' they were not filed to enforce an environmental law or regulation.... In the Land Use Appeal ... [Residents] complain ... that ... the development of the site would create adverse environmental health 'by disturbing and disbursing such deadly contaminants, contrary to Section 1298.07(h)' of the Lower Gwynedd Zoning Ordinance. Section 1298.07 of the Lower Gwynedd Zoning Ordinance addresses conditional uses. Specifically, Section 1298.07(h) reads: 'The Board shall impose such conditions as are necessary to ensure compliance with the purpose and intent of this Zoning Code, which conditions may include planting and buffers, harmonious design of buildings and the elimination of noxious, offensive or hazardous elements.' It is clear that Section 1298.07(h) is not an environmental law or regulation. Rather, it relates to the aesthetics and public safety of the district.

Trial Court Opinion, February 25, 2005, at 6. This Court agrees.

The trial court concluded that Residents were not immune from liability and certi-

fied its order for appeal.[8]

On appeal, Residents raise three issues: (1) Whether the Act protects statements made to third parties regarding environmental issues under consideration by a governmental body (relating to the tortious interference with contract claim)? (2) Whether immunity extends to persons filing zoning and land use appeals (relating to the abuse of process claim)? and (3) Whether the trial court erred when it declined to dismiss Developers' lawsuit based on Residents' preliminary objections pursuant to the Noerr–Pennington Doctrine?

Section 8302 of the Act sets forth the general rule and specifically defines the actions and communications which are protected:

(a) General rule. Except as provided in subsection (b), a person that, pursuant to Federal or State law, *files an action* in the courts of this Commonwealth to enforce an environmental law or regulation or that *makes an oral or written communication to a government agency relating to enforcement or implementation of an environmental law or regulation* shall be immune from civil liability in any resulting legal proceeding for damages *where the action or communication is aimed at procuring favorable governmental action.*

27 Pa.C.S. § 8302(a) (Emphasis added).

The exceptions to immunity are:

(b) Exceptions. A person shall not be immune under this section if the allegation in the action or any communication to the government is not relevant or material to the enforcement or implementation of an environmental law or regulation and:

(1) the allegation in the action or communication is knowingly false, deliber-

ately misleading or made with malicious and reckless disregard for the truth or falsity;

(2) the allegation in the action or communication is made for the sole purpose of interfering with existing or proposed business relationships; or

(3) the oral or written communication to a government agency relating to enforcement or implementation of an environmental law or regulation is later determined to be a wrongful use of process or an abuse of process.

27 Pa.C.S. § 8302(b).

I. *Whether Residents are Immune from Liability Under the Act for Tortious Interference with Contract*

■ Before any review concerning the relevance of the exceptions, Residents must allege facts, which if believed, would establish their actions and communications were aimed at procuring favorable government action. Residents assert the Act was intended to protect communications to *third parties* such as prospective homebuyers and real estate agents, not only communications made directly to a government agency. Specifically, Residents rely on the Act's definition of "Communication to the Government" in Section 8301 of the Act which provides:

"Communication to the government." A written or oral statement or writing made:

(1) before legislative, executive or judicial proceeding or any other official proceeding authorized by law;

(2) **in connection with an issue under consideration or review by a legislative, executive or judicial body or any other official proceeding authorized by law;** or

---

**8.** Section 8303 of the Act, 27 Pa.C.S. § 8303, provides that when a person raises immunity, the trial court must hold a hearing, and if immunity is denied, there is an interlocutory appeal as of right to the Commonwealth Court.

(3) to a government agency in connection with the implementation and enforcement of environmental law and regulations.

27 Pa.C.S. § 8301 (Emphasis added).

According to Residents, Subsections (1) and (3) specify that the communication must be directed to a government agency, while subsection (2) specifically left out that requirement, indicating a legislative intent that it is not required. Therefore, Residents contend, *any* statement made to *any* person or entity is protected under the Act so long as those statements were made in connection with an environmental issue under consideration or review by a legislative, executive or judicial body or any other official proceeding authorized by law. Residents assert that since their statements to prospective purchasers, real estate agents and the media about the development's environmental impact were made in connection with their pending land use and zoning appeals, they are immune from suit under Section 8301(2). This Court does not agree.

First, this Court does not agree that the Act's application turns on whether a communication was directed to the government as opposed to third parties. This Court finds the Act covers *both* communications to the government *and* communications to third parties. There is a caveat. When determining whether a communication is entitled to immunity, the court must look to the nature of the statement keeping in mind the intended audience and the purpose of the communication.[9] Contrary to Residents' contention, the Act does not perfunctorily immunize all communications merely because they concern an environmental issue under consideration or review by a government body.

■ The Act and the legislative intent are clear.[10] Section 8302 of the Act, 27 Pa.C.S. § 8302(a), affords immunity only where the communication or action is "aimed at procuring favorable governmental action." The Act protects communications to the government, directly or indirectly *through* third parties if the defendant presents a prima facie case indicating that, more likely than not, the communications involve legitimate concerns stated with the intent to openly inform and attract governmental attention to environmental issues, such as violations of environmental laws and regulations. The purpose of the Act is to encourage and open the lines of communication to those government bodies clothed with the authority to correct or enforce our environmental laws and regulations. If the communications made to third parties are the equivalent of communicating to the government, the communications deserve the immunity provided by the Act.[11]

■ On the other hand, the Act does not afford immunity from liability for communications which are not intended to, or

9. Obviously, false or malicious statements and statements made for the sole purpose of interfering with proposed business relationships are not protected. 27 Pa.C.S. § 8302(b).

10. This Court conducts its review of the Act pursuant to the directive of Section 1921 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921, namely, that the object of statutory interpretation and construction is to ascertain and effectuate the intent of the legislature and to give effect to all of the statute's provisions, and when the language of a statute is clear and unambiguous, to read its provisions in accordance with their plain meaning and common usage. *Commonwealth v. Burnsworth*, 543 Pa. 18, 669 A.2d 883 (1995).

11. Examples of such communications might include: a letter to the editor of a local newspaper expressing concern about the possibility of contamination at a proposed development, a statement made to a newspaper reporter about the possibility of contamination at a proposed development, or a sign-

not realistically expected to, reach the eyes and ears of those who have the ability to conduct investigations of a legitimate environmental issue. The Act was designed to protect those persons targeted by frivolous lawsuits based on their constitutionally protected *government petitioning* activities.

■ Accordingly, this Court concludes that the immunity authorized by the Act is restricted to those persons who petition the government or make any statement reasonably likely to encourage consideration or review of an environmental issue by a legislative, executive, or judicial body or in any official proceeding in an effort to effect such consideration. Immunity is triggered if, and only if, the communication is aimed at procuring favorable government action, regardless of whether the communication is made directly to the government or to third parties.[12]

■ This Court agrees with the trial court that the Act was not intended to immunize Residents' statements made to potential home buyers and real estate agents concerning their belief that the site was contaminated by agent orange and other dioxins. The homebuyers and real estate agents were private citizens who comprised a very select audience. The communications were not for the larger purpose of calling governmental or public attention to any alleged contamination, or to influence the government in its consid-

eration or review of an environmental issue.

■ Moreover, the alleged statements to the media about agent orange contamination were not within the parameters of the Act in these circumstances. At the time the statements were made, the DEP had issued its Act 2 clearances stating that the Property was remediated. Residents presented no evidence to refute Developers' claims in the Amended Complaint or the DEP's findings in the Act 2 Certification that the Property was properly remediated and achieved the proper "Residential Statewide Health Standards" for a safe and clean residential development. Residents do not maintain, nor could they, that by making the statements, they realistically expected success in procuring government action. Indeed, the government had already reviewed Residents' grievances and acted. The development was underway and the window of immunity for their communications was closed. This Court does not believe that the legislature in promulgating the Act intended to immunize relentless communications made in the face of defeat, long *after* the government has conducted its review of the issue.[13]

Accordingly, the trial court did not err when it concluded that Residents' alleged communications which formed the basis of Developers' tortious interference with contract claim were not covered by the Act.

---

board which protests the development of a wetland. Although such oral and written statements are technically not made *directly* to the government, they are more likely than not, aimed at procuring favorable government action and may be entitled to the immunity authorized by the Act.

12. This Court notes that it remains the Developers' burden to prove all of the elements of its underlying cause of action for tortious interference with contract. *See Strickland v. University of Scranton,* 700 A.2d 979, 985 (Pa.Super.1997).

13. The DEP's Act 2 clearance was sent to Developers on May 25, 2001. Section 303 of Act 2, 35 P.S. § 6026.303 requires the DEP to give notice of the submission of the final report demonstrating attainment of Statewide Health Standards to the municipality and publish such notice "in a newspaper of general circulation serving the area and in the Pennsylvania Bulletin." According to the Amended Complaint, Residents' communications began about a year later in July of 2002.

II. *Whether Residents are Immune from Liability for Abuse of Process*

 With regard to Residents' second issue, this Court agrees with the trial court's conclusion that zoning appeals and land use appeals are not the type of action or litigation protected under the Act. Developers' lawsuit is not a SLAPP suit, i.e., brought merely to stifle Residents' protests and punish them for "filing an action to enforce an environmental law or regulation" (abuse of process claim).[14]

First, this Court agrees with the trial court that Residents' appeals were not legitimate actions to enforce environmental laws or regulations as contemplated by the Act. Residents' zoning appeal was voluntarily withdrawn three hours before the scheduled hearing, and their land use appeal, filed nineteen months after the Township zoning officer's decision to issue building permits for the construction, was dismissed as untimely. Both actions were terminated in favor of the Developers.[15] Under these circumstances, the trial court did not err when it determined Developers' lawsuit, which was filed in March of 2003, lawfully sought redress for abuse of process as opposed to being a SLAPP suit.

 In any event, the trial court keenly observed that Residents' land use and zoning appeals were not "actions to enforce any environmental law or regula-tion." Although one of the grounds for the land use appeal arguably subsumed an environmentally-related issue, the "action" i.e., the land use appeal, did not relate to the identification and elimination of Developers' violation of any environmental law or regulation. Rather, Residents' land use appeal requested the Township to set aside the Board's allegedly arbitrary and capricious approval of Developer's conditional use application. Similarly, Residents' zoning appeal challenged the validity of the zoning change from single family homes to 36 carriage homes. These appeals related to alleged violations of the Municipal Planning Code, and these appeals were not vehicles designed to enforce the Commonwealth's environmental laws and regulations. *See Appeal of Little Britain Township From Decision of Zoning Hearing Board of Little Britain Township, Lancaster County, Pa.,* 651 A.2d 606, 613 (Pa. Cmwlth.1994) (Department of Environmental Resources, not the ZHB, is charged with the duty of enforcing and seeking compliance with the various environmental protection laws enacted by the legislature). Accordingly this Court rejects Residents' contention that the land use and zoning appeals briefly pending before the Board constituted the type of government petitioning activity that entitled them to immunity under the Act.

Finally, Residents claim that the trial court erred when it overruled their prelim-

---

**14.** "Enforcement of environmental law and regulation" is defined under the Act as: "Activity relating to the identification and elimination of violations of environmental laws and regulations, including investigations of alleged violations, inspections of activities subject to regulation under environmental law and regulations and responses taken to produce corrections of the violations." 27 Pa.C.S. § 8301.

**15.** A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings if:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
(2) The proceedings have terminated in favor of the person against whom they are brought.
42 Pa.C.S. 8351(a).

**436**

inary objections to the initial Complaint on November 13, 2003, based on the Noerr–Pennington Doctrine.

As correctly noted by Developers, the Noerr–Pennington issue is not properly before this Court. Residents appealed from the *October 8, 2003*, order which denied Residents' motion for immunity under the Act, not from the *November 13, 2003*, order which denied that aspect of their preliminary objections. Residents seek to bootstrap to their denial of immunity appeal a challenge to the trial court's November 13, 2003, order overruling their preliminary objection to the original Complaint premised on the Noerr–Pennington doctrine.

This Court lacks jurisdiction to address resident's first amendment issue (which is exclusively vested in the Superior Court, 42 Pa.C.S. § 742).[16] Even if this Court had jurisdiction, the November 13, 2003, order dismissing Residents' preliminary objections was an unappealable and interlocutory order which was never certified for review by the trial court. *Chase Manhattan Mortgage v. Hodes*, 784 A.2d 144 (Pa.Super.2001).[17]

For the foregoing reasons, the order of the trial court is affirmed.

### ORDER

AND NOW, this 28th day of December, 2005, the order of the trial court in the above captioned case is hereby affirmed.

---

16. 42 Pa.C.S. § 742 provides that "[t]he Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas, regardless of the nature of the controversy or the amount involved, except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court."

17. Even if this issue was properly before this Court, Residents have failed to establish that their communications involved government petitioning activities. *See* discussion *supra*.