## PENNSBURY VILLAGE ASSOCIATES, LLC

v.

## Aaron McINTYRE, Alma Forsyth and John Doe

### Appeal of: Aaron McIntyre.

Commonwealth Court of Pennsylvania.

Argued March 12, 2008.

Decided May 30, 2008.

---

Larry Silver, Philadelphia, for appellant.

Jonathan P. Boughrum, Berwyn, for appellee.

BEFORE: LEADBETTER, President, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

Aaron McIntyre has filed an interlocutory appeal as of right from the order of the Court of Common Pleas of Chester County that denied McIntyre's motion for immunity in the action filed against him, Alma Forsyth and unnamed other defendants by Pennsbury Village Associates, LLC (PVA) claiming breach of contract, tortious interference with contractual relationship and conspiracy arising out of a Stipulation entered into between the parties, Pennsbury Township and others to resolve land use appeals from a conditional use approval of PVA's development plan. McIntyre claimed immunity under the Act known as the Participation in Environmental Law or Regulation Act (Immunity Act), 27 Pa.C.S. §§ 8301–8305, relating to citizen participation in the establishment of state and local policy and in the implementation and enforcement of environmental law and regulations.

McIntyre questions whether the trial court abused its discretion and/or erred in ruling that he is not immune from civil liability under 27 Pa.C.S. § 8302; erred in determining that County regulations restricting the use of open space purchased with County grant funds are not an environmental regulation; and erred in holding that he was required to prove that he made a communication to an agency relating to enforcement or implementation of an environmental law or regulation where the complaint alleges such communications. He also questions whether the trial court erred in basing its decision on factual determinations as to motive that are irrelevant.[1]

1. The Preamble to the Act of December 20, 2000, P.L. 980, which added Chapters 77 and 83 of Title 27 Pa.C.S., 27 Pa.C.S. Appendix, states:

## I

PVA owns two substantial parcels (West Parcel and East Parcel) that abut on either side a parcel of more than seven acres on which the Township Building for Pennsbury Township is located near the back (Township Building Parcel), all of which are on the south side of Baltimore Pike. To the south of the three parcels is a large parcel (Parkland Parcel) that the Township acquired in 1996, using in part funds from the Chester County Heritage Park and Open Space Municipal Grant Program (Grant Program). As required under the Grant Program, a Declaration of Covenants, Conditions, and Restrictions was imposed as recorded by the County Recorder of Deeds, including the following "restrictions":

> The use of the Property as defined in this Agreement shall be restricted to open space/park land/recreational purposes. The property shall be utilized perpetually for park and recreational purposes only. If, when and as it is deemed inappropriate to utilize said real estate for active park and recreational purposes, it is agreed, understood and hereby declared as a declaration, restriction and covenant running with the land that the utilization of the Property shall be for passive recreation or open space. The term of this restriction shall be perpetual and it shall be a covenant running with the land.

Notes of Testimony (N.T.) Ex. PVA–1; Reproduced Record (R.R.) 237a, 238a.

In 2004 PVA applied for conditional use approval to use the West, East and Township Building Parcels for a mixed-use, high-density residential development called Pennsbury Village. The Township Board of Supervisors gave conditional use approval for a modified version of the proposal subject to 55 restrictions. Complaint ¶ 30; R.R. 10a. PVA appealed from the imposition of conditions, and McIntyre and other residents appealed from the approval. A representative of the residents approached PVA about negotiating a development plan, and discussions ensued among PVA representatives and counsel, members of the Board of Supervisors, Township officials and residents, including McIntyre.

One important subject of discussion was sewage facilities. The parties ultimately agreed on creation of an efficient, enclosed wastewater treatment plant with excess capacity and the release of highly treated wastewater through subsurface infiltration under part of the park. Another important topic was access to the East Parcel. The Complaint avers that several residents adamantly opposed any access road that would cross between the Township Building and Baltimore Pike, but they did not oppose access from a signalized intersection behind the building to serve as access to the park parking area and to the East Parcel, although they did not commit to a specific route. Complaint ¶ 48; R.R. 14a.

The parties decided to enter into a Stipulation in the land use appeals from the Board of Supervisors' approval of the con-

The General Assembly finds and declares as follows:

(1) It is contrary to the public interest to allow lawsuits, known as Strategic Lawsuits Against Public Participation (SLAPP), to be brought primarily to chill the valid exercise by citizens of their constitutional right to freedom of speech and to petition the government for the redress of grievances.

(2) It is in the public interest to empower citizens to bring a swift end to retaliatory lawsuits seeking to undermine their participation in the establishment of State and local environmental policy and in the implementation and enforcement of environmental law and regulations.

ditional use application. PVA contends that in discussions all parties relied upon the issuance of a letter on August 15, 2002 from the County Solicitor's office stating that the Board of Supervisors had the right to use portions of the parkland for wastewater treatment and disposal upon reimbursement of the funds contributed by the County for the purchase at a rate of approximately $11,000 per acre. Complaint, Ex. E; R.R. 50a. (The letter also stated that "the issue as to the perpetual restrictive covenant remains potentially problematic." *Id.*; R.R. 50a–51a.) After numerous drafts, a final version of the Stipulation was signed by all parties, including McIntyre. The Township Solicitor sent a letter of April 21, 2006 requesting a meeting with County officials including the County Commissioners.

PVA alleges that McIntyre and others communicated with the Commissioners for the purpose of persuading them to object and to refuse to consent to either the access drive or the wastewater treatment provisions of the Stipulation. By letter of June 15, 2006, the County stated that use of the park for a road to access a private development and for treated sewage effluent was contrary to the restrictive covenants placed on the property and that the County would oppose any such use and would strictly enforce the covenants. PVA filed its Complaint against McIntyre, Forsyth and others on July 13, 2006, claiming breach of contract in regard to obligations under the Stipulation by seeking to induce the County to refuse to cooperate; tortious interference with contractual relationship by precluding the Township from being able to implement its contractual obligation to obtain County approval pursuant to the commitments set forth in the County's 2002 letter; and conspiracy in that McIntyre, Forsyth and unnamed others conspired to induce County officials not to honor the commitments made in the 2002 letter.

McIntyre filed preliminary objections asserting that it was clear on the face of the Complaint that PVA did not state a cause of action in that McIntyre's conduct, as alleged by PVA, was privileged under the First Amendment to the United States Constitution as developed in the *Noerr–Pennington* Doctrine and that he is entitled to immunity under 27 Pa.C.S. §§ 8301–8305.[2] The trial court did not rule on the preliminary objections. McIntyre then filed his motion for the trial court to determine immunity.

Section 8302 of the Immunity Act, relating to immunity, provides:

(a) **General rule.**—Except as provided in subsection (b), a person that, pursuant to Federal or State law, files an action in the courts of this Commonwealth to enforce an environmental law or regulation or that makes an oral or written communication to a government agency relating to enforcement or implementation of an environmental law or regulation shall be immune from civil liability in any resulting legal proceeding for damages where the action or communication is aimed at procuring favorable governmental action.

(b) **Exceptions.**—A person shall not be immune under this section if the alle-

---

**2.** The *Noerr–Pennington* Doctrine, named for *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), holds that individuals and organizations are immune from liability under antitrust laws for exercising their First Amendment right to petition government and also immune from tort liability for protected political activity. *See Penllyn Greene Assocs., L.P. v. Clouser,* 890 A.2d 424, 429 n. 5 (Pa.Cmwlth.2005).

gation in the action or any communication to the government is not relevant or material to the enforcement or implementation of an environmental law or regulation and:

(1) the allegation in the action or communication is knowingly false, deliberately misleading or made with malicious and reckless disregard for the truth or falsity;

(2) the allegation in the action or communication is made for the sole purpose of interfering with existing or proposed business relationships; or

(3) the oral or written communication to a government agency relating to enforcement or implementation of an environmental law or regulation is later determined to be a wrongful use of process or an abuse of process.

Section 8303 provides the mechanisms for the swift determination of immunity:

A person who wishes to raise the defense of immunity from civil liability under this chapter may file a motion with the court requesting the court to conduct a hearing to determine the preliminary issue of immunity. If a motion is filed, the court shall then conduct a hearing and if the motion is denied, the moving party shall have an interlocutory appeal of right to the Commonwealth Court, during which time all discovery shall be stayed.

At the June 27, 2007 hearing, in response to the trial court's question to counsel as to what environmental law or regulation McIntyre sought to enforce, counsel pointed out that County of Chester Resolution No. 89–41 stated that the Grant Program was authorized pursuant to Article I, Section 27 of the Pennsylvania Constitution, which is the provision that empowers and commands municipalities to protect the environment. The Resolution authorized placing on the ballot a non-binding referendum question of whether debt not to exceed $50,000,000 should be incurred to finance the preservation of open space through the acquisition of land. The Grant Program, Round VIII, provided in Section II, ¶ 7a that the deeds to all lands to be reimbursed under that program "must contain a restrictive covenant requiring the perpetual use of the land for public park or recreation purposes." Ex. 2; R.R. 125a.

McIntyre testified that he never approached the County regarding whether sewage should be permitted, but he did ask the County to uphold the covenants and restrictions associated with the park and not to allow the road to go through the park. He stated that his concern primarily was water runoff from rain; a tributary of the Brandywine River flows through the park, and he thought runoff from a road would adversely affect it. He spoke to the three Commissioners at a public meeting, and he asked them to uphold the restrictions and covenants associated with the park in regard to the road, and he e-mailed them.

The trial court denied the motion for immunity. The court noted that the Immunity Act had been interpreted in *Penllyn Greene Assocs., L.P. v. Clouser*, 890 A.2d 424 (Pa.Cmwlth.2005), and stated that the intent was to immunize a person from liability for exercising the First Amendment right to petition the government, although the exercise of such right is premised on a belief that one is doing so for a legitimate purpose. Under Section 8302 a defendant must establish that his or her written or oral communication related to the "enforcement or implementation of an environmental law or regulation." McIntyre's speaking at the public meeting satisfied the requirement of communication to a public agency, but his request that the Commissioners enforce provisions

of the recorded Declaration of Covenants, Conditions, and Restrictions, specifically that use of the property be restricted to "open space/park land/recreational purposes," was not communication about an environmental law and regulation. Further, McIntyre's personal concern about the effect of storm water runoff from the road could not be equated with the implementation or enforcement of environmental law and regulations. Merely because an individual believes that the environment may be harmed by a third party's conduct is not the same, and the individual proceeds at his or her own risk in suggesting that the government intervene.[3]

## II

Quoting the general rule for immunity under Section 8302(a), McIntyre contends that the Immunity Act establishes two elements for immunity: (1) an oral or written communication to a government agency (2) relating to enforcement or implementation of an environmental law or regulation. As the trial court acknowledged, McIntyre's communication was to a government agency. McIntyre maintains as well that his communication related to enforcement of environmental law or regulation. He quotes the definition of "[e]nforcement of environmental law and regulation" from Section 8301, including activity relating to *identification and elimination of violations of environmental laws and regulations*, and he argues that he is accused of communication designed to persuade the County to enforce its open space regulations. It is not disputed that the Parkland Parcel was purchased with County and State open space grant funds. A through road to serve a private, high-density residential development is not a park and/or recreational use as required by the deed restriction.

McIntyre contends further that his communications also are protected under Section 8301's definition of "[i]mplementation of environmental law and regulation" as activity relating to administration of environmental programs. The trial court did not explain why it did not believe that the open space regulations are not environmental regulations. The term "environmental" is not defined in the Immunity Act; thus, dictionary definitions may be consulted. *Schuylkill Township v. Pennsylvania Builders Ass'n*, 935 A.2d 575 (Pa. Cmwlth.2007), *appeal granted*, —— Pa. ——, 947 A.2d 714 (2008). One dictionary has: "1. Of, relating to, or associated with the environment. 2. Relating to or being concerned with the ecological impact of altering the environment." The American Heritage Dictionary of the English Language (4th ed. 2000).

The authorization of the grants in Resolution No. 89–41 specifically to satisfy the Constitutional mandate in Article I, Section 27 of a right of the people to "clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment" shows that such grants are environmental provisions. McIntyre refers to other environmental statutes addressing open space, including Section 6116 of the Environmental Stewardship and Watershed Protection

---

**3.** In *Penllyn Greene Assocs.* the Court stated that the hearing procedure provided by the legislature at this initial phase seemed akin to a preliminary objection in the nature of a demurrer, with the question being whether on the facts alleged the law says with certainty that no recovery is possible. The burden is on the defendants to show their right to immunity. On appeal the Court is to determine whether the trial court correctly evaluated the claimed immunity and whether those claiming immunity would be immune if they prove the facts they alleged; that determination involves questions of law as to which the Court's review is plenary. *Id.*

Act, 27 Pa.C.S. § 6116, which in Subsection (c)(2) allocates moneys in the Growing Greener Bond Fund to be used by the Department of Conservation and Natural Resources for existing programs for the improvement of State parks and forests, "community park and recreation grants and open space preservation." Section 2(1) of the Act known as the Open Space Lands Act, Act of January 19, 1968, P.L. (1967) 992, *as amended,* 32 P.S. § 5002(1), defines "Open space benefits" resulting from restricting use of predominantly undeveloped open spaces or areas to include protection and conservation of water resources and watersheds, forests, farmland, park recreation or conservation sites, natural or scenic resources, preservation of sites of historic, geologic or botanic interest and the promotion of cohesive and efficient land development by preserving open spaces between communities. Thus open space benefits are environmental, and the deed restriction re-

quirement is a regulation implementing a statutory program.

■ Further, none of the exceptions in Section 8302(b) applies. For an exception to apply the allegation in an objector's action or communication to government must not be relevant to the enforcement or implementation of an environmental law or regulation and (1) must be knowingly false, deliberately misleading or made with reckless disregard for truth, (2) must be made for the sole purpose of interfering with business relationships or (3) the communication to government must later be determined to be wrongful use of process or abuse of process. Here the communications were relevant to enforcement of environmental regulations. Also, they were true, they were designed to produce favorable governmental action (*i.e.*, they were not for the sole purpose of interfering with business relationships), and no legal process was employed in making them.[4]

4. McIntyre also argues that the trial court erred by placing the burden on him to prove that he had communications with a government agency and that they were to enforce a specific environmental regulation. In *Penllyn Greene Assocs.* the Court stated that the standard was the same as for a demurrer: whether on the facts averred in the complaint the law says with certainty that no recovery is possible. The facts alleged, *i.e.* that he communicated with County officials in opposition to the proposal seeking to enforce the deed restrictions, are sufficient to establish immunity. Finally, he contends that motive is irrelevant. The trial court's limitation of immunity under the Act only to those found to have a subjectively "legitimate purpose" violates the First Amendment. In *Firetree, Ltd. v. Fairchild,* 920 A.2d 913, 919 (Pa.Cmwlth.2007), *appeal denied,* —— Pa. ——, 946 A.2d 689 (2008), it was held that under *Noerr–Pennington* Doctrine a citizen or a legislator has an absolute right to petition the executive branch to stop the proposed sale of government property, and his or her motive is irrelevant. Here no evidence was offered as to differing views of the meaning of the Stipulation.

In a supplemental brief filed by permission, McIntyre traces two "lineages" of environmental law. The first, known as "conservation" or "preservation" law began with efforts of early twentieth century conservationists to protect and preserve natural and scenic lands by establishing parks and other protected areas. More recent efforts to preserve open spaces in built-up areas are direct descendents of this conservation movement. In Pennsylvania Section 1 of the Open Space Lands Act, 32 P.S. § 5001, states: "The Legislature finds that it is important to preserve open space and to meet needs for recreation, amenity, and conservation of natural resources, including farm land, forests, and a pure and adequate water supply." A second lineage of modern environmental law has been called "pollution control" law, and it stems from the early 1960s, particularly Rachel Carson's study of the ecological effects of toxins in her seminal work *Silent Spring* (1962). Pennsylvania's adoption of Article I, Section 27 of the Constitution in 1971, makes clear that preservation of natural, scenic, historical and esthetic values are part of the essence of what is "environmental."

McIntyre's request to the Commissioners related to the Grant Program and also to the Chester County Open Space and Recreation Program (Open Space Program) under which the Grant Program was started. Section 2(3) of the Keystone Recreation, Park and Conservation Fund Act, Act of July 2, 1993, P.L. 359, *as amended*, 32 P.S. § 2012(3), declares that the Commonwealth's many local park areas are among assets for which studies show a need for immediate funding for rehabilitation of park and recreational facilities that are of critical importance to visitor safety and environmental protection and for the acquisition of recreation or open space lands that face imminent loss or damage. The grant program under this Act is similar to the Open Space Program, and both are environmental in nature.[5]

PVA in response notes that the party requesting immunity bears the burden to show his or her right to immunity. *Penllyn Greene Assocs.* Part of that burden is to establish that communications were "aimed at procuring favorable governmental action." *Id.*, 890 A.2d at 432 (quoting Section 8302(a)). PVA argues that McIntyre's witness William Gladden did not offer an opinion that the deed restriction pursuant to the Grant Program was an environmental law or regulation. Second PVA avers that McIntyre's communications with the Commissioners were intended to preclude the building of a road in the park, although that was sanctioned in the Stipulation. Without explanation it asserts: "The building of the road in the Pennsbury park would not interfere with

or violate the Restriction or the Resolution." Brief of Appellee at 6.

Further, PVA argues that "procuring favorable governmental action" as required by Section 8302(a) of the Immunity Act was not McIntyre's intent when he made the communications but rather preventing implementation of the terms of the Stipulation to which he had agreed. The Stipulation states in ¶ 1(d) that there shall never be a road connection to the East Parcel north of the Township Building and in ¶ 1(f): "The Township Board of Supervisors shall otherwise have the right to determine the exact configuration of the access drives to extend from the existing intersection." R.R. 33a. PVA contends that because McIntyre's communications were not relevant or material to enforcement or implementation of an environmental law or regulation, the exception to immunity for interfering with a business relationship applies. It states briefly that McIntyre's arguments relating to the *Noerr–Pennington* Doctrine are not properly before the Court as the preliminary objections are still pending before the trial court. Also, his view that the motive of the speaker is irrelevant is contrary to the Act's requirement that the communication be for the *purpose of* procuring favorable government action and the statement in *Penllyn Greene Assocs.* that "[w]hen determining whether a communication is entitled to immunity, the court must look to the nature of the statement keeping in mind the intended audience and the pur-

---

**5.** McIntyre has requested that the Court take judicial notice of several documents, stating that judicial notice is proper under Pa. R.E. 201(b)(2), for notice of a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The documents include Chester County Resolution No. 89–35, providing for a referendum to establish and provide

funding for the Open Space Program in satisfaction of the mandate in Article I, Section 27 of the Constitution and the recording of a "Declaration of Covenant" acknowledging that the purchase of lands was financed in part by a Keystone Recreation, Park and Conservation Fund grant from the Department of Conservation and Natural Resources. The Court grants the request to take notice.

pose of the communication." *Id.*, 890 A.2d at 433.[6]

### III

■ After its review, the Court is of the opinion that the trial court erred in denying McIntyre's motion for immunity. The trial court determined that McIntyre's request to the Commissioners to enforce the recorded permanent deed restriction requiring the Parkland Parcel to be used for "open space/park land/recreational purposes" was not a communication about implementation or enforcement of environmental law and regulations. The trial court did not explain that conclusion but focused on McIntyre's stated concern for the effects of storm water runoff rather than on whether the deed restriction under the Grant Program was an environmental regulation.[7] The statutory authority cited by McIntyre in his original and supplemental briefs demonstrates, however, that the deed restriction that McIntyre sought to have enforced is an environmental law or regulation.

County Resolution No. 89–41 stated that it was satisfying the mandate in Article I, Section 27 of the Constitution for preservation of natural values of the environment. The referendum question approved by the voters authorized the County's incurring up to $50,000,000 in additional debt to be used to finance an Open Space and Recreation Program in the County "for the purpose of financing the preservation of open space in Chester County through the acquisition of interests in land and related facilities (including but not limited to environmentally sensitive areas, natural or sce-

nic resources, farm land, forests and historic sites, and the development of parks and recreational facilities). . . . " Ex. 1; R.R. 247a. The Open Space Lands Act establishes an elaborate mechanism for providing funding for acquisition of open space lands in order to preserve such land in service of enumerated open space benefits that are expressly environmental in nature. 32 P.S. §§ 5001 and 5002(1). Government at three levels and the electorate have endorsed committing a good deal of money and effort to programs to acquire and preserve open space land as part of an overall plan of environmental protection, and the deed restriction implementing that program was an "environmental law or regulation" for purposes of Section 8302 of the Immunity Act.

Because McIntyre's communications were to government officials and relate to enforcement or implementation of environmental law or regulation, the exceptions in Section 8302(b)(1)-(3) do not apply. PVA's assertion that immunity may be denied regardless misperceives the nature of immunity. Immunity is most valuable when there is a real prospect of liability without it. When the words of a statute are clear, there is no need to look beyond the plain meaning. *Colville v. Allegheny County Retirement Board,* 592 Pa. 433, 926 A.2d 424 (2007). Under the plain language of Section 8302(a), the question in this proceeding is not whether McIntyre's communication to the Commissioners was inconsistent with his promises in the Stipulation but rather whether the communication related to an environmental law or regulation and sought favorable governmental action.

---

**6.** PVA's brief in response to McIntyre's supplemental brief argues that regardless of whether such a law or regulation was at issue, the goal of McIntyre's appeal is to have the Court approve his intentional breach of a written contract.

**7.** The trial court stated at the hearing: "And if you are of the view that a requirement that open space be open space constitutes environmental law or regulation, again, you and I can agree to disagree." N.T. 37; R.R. 121a.

This case stands in marked contrast to *Penllyn Greene Assocs.* There long after the Department of Environmental Protection certified that a property had been remediated and attained required standards, the objectors filed a land use appeal claiming among other things that the land likely was contaminated with dioxin; nineteen months after approval of a zoning change they appealed and sought to overturn the change. The objectors received a hearing date and a continuance and then withdrew the appeal three hours before the hearing. The Court noted that the objectors' claims of contamination made to prospective purchasers and others were not made directly or indirectly to government officials and did not seek to procure favorable action because the time to challenge had passed. The provision of the zoning code at issue related to building procedures and esthetics and was not an environmental law or regulation. Furthermore, use of legal process to pursue the last untimely appeal and then withdraw it was an instance of using legal process solely as a weapon to harass.

In this case McIntyre made communications to government officials concerning an environmental law or regulation, and he sought favorable action (which he obtained). He therefore met the requirements of Section 8302(a) of the Immunity Act, and, as a result, the exceptions in Section 8302(b) do not apply. Because the trial court did not correctly evaluate the claimed immunity, the trial court's order is reversed.

President Judge LEADBETTER dissents.

1. Article I, Section 27 of the Pennsylvania

*ORDER*

AND NOW, this 30th day of May, 2008, application of Appellant Aaron McIntyre for the Court to take judicial notice is granted. The order of the Court of Common Pleas of Chester County is reversed.

CONCURRING OPINION BY Judge FRIEDMAN.

I concur in the result reached by the majority. However, I cannot agree with the majority's conclusion that "the **deed restriction** that [Aaron] McIntyre sought to have enforced **is** an environmental law or regulation" for purposes of section 8302 of the Participation in Environmental Law or Regulation Act (Immunity Act), 27 Pa. C.S. § 8302. (Majority op. at 13–14) (emphasis added). Instead of reversing the trial court because the deed restriction is an environmental law or regulation, I would reverse because the deed restriction relates to "implementation of an environmental law or regulation" under section 8302 of the Immunity Act.

Pennsbury Village Associates, LLC (PVA) filed a complaint against McIntyre after McIntyre sought to have the County Commissioners enforce a deed restriction limiting the use of certain public property for open space, parkland or recreational purposes. Pennsbury Township acquired the property with the aid of funds from the Chester County Heritage Park and Open Space Municipal Grant Program (Grant Program), which required the deed restriction. The County instituted the Grant Program through Resolution No. 89–41 and pursuant to Article I, Section 27 of the Pennsylvania Constitution.[1]

McIntyre sought immunity from PVA's lawsuit under section 8302(a) of the Immunity Act, which provides, in pertinent part:

Constitution states that: (1) the people have a

[A] person that ... makes an oral or written communication to a government agency relating to enforcement or **implementation of an environmental law or regulation** shall be immune from civil liability in any resulting legal proceeding for damages where the action or communication is aimed at procuring favorable governmental action.

27 Pa.C.S. § 8302(a) (emphasis added). Section 8301 of the Immunity Act defines "implementation of environmental law and regulation" as "[a]ctivity relating to the development and administration of environmental programs developed under environmental law and regulations." 27 Pa. C.S. § 8301.

There can be no question that Resolution No. 89–41 **implemented** an environmental law, i.e., Article I, Section 27 of the Pennsylvania Constitution. Indeed, this court has held that: (1) Article I, Section 27 is a self-executing provision of our state constitution; (2) with respect to open space matters, municipal agencies have responsibility to apply the Article I, Section 27 mandate to be trustees of public natural resources; and (3) municipal agencies act as trustees of the public natural resources as they fulfill their respective roles in the planning and regulation of land use. *Community College of Delaware County v. Fox* 20 Pa.Cmwlth. 335, 342 A.2d 468 (1975); *Payne v. Kassab,* 11 Pa.Cmwlth. 14, 312 A.2d 86 (1973), *aff'd,* 468 Pa. 226, 361 A.2d 263 (1976).

Here, the County activated the Grant Program through Resolution No. 89–41

and pursuant to Article I, Section 27. The County required the administrators of the Grant Program to impose a deed restriction on property acquired with the aid of funds received from the Grant Program. Thus, the deed restriction relates to the administration of the Grant Program, an environmental program developed under Article 1, Section 27 of the Pennsylvania Constitution. This makes McIntyre's request that the County Commissioners enforce the deed restriction a communication relating to the implementation of an environmental law. As such, McIntyre was entitled to immunity under section 8302(a) of the Immunity Act.[2]

Accordingly, I agree that the Court of Common Pleas of Chester County erred in denying McIntyre's request for immunity under section 8302(a) of the Immunity Act.

Judge COHN JUBELIRER joins in this concurring opinion.

---

right to clean air, pure water and to the preservation of the natural, scenic, historic and esthetic values of the environment; (2) our state's public natural resources are the common property of all the people, including generations yet to come; and (3) as trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people. Pa. Const., art. I, § 27.

**2.** In my view, McIntyre's request to enforce the deed restriction is **not** a communication relating to **enforcement** of an environmental law or regulation because the deed restriction is **not** an environmental law or regulation.