**Zummo v. City of Scranton**

*Robert J. Murphy,* for plaintiffs.
*John F. Kennedy,* for defendant.

MINORA, *J.*, February 10, 2011—

## I. INTRODUCTION

Currently before the court are two matters. First, is defendant's motion to amend its answer and new matter to include the affirmative defense of a general release executed in a similar but prior action against the defendant. Second, is defendant's motion for summary judgment which is based on the substantive merits of the general release at issue.

Obviously, the court must first decide the motion to amend. If that motion is granted, we can then consider the merits of defendant's motion for summary judgment

based on the reneral release. If the motion to amend is not granted, the summary judgment motion becomes moot.

By way of background, this current action filed to 2005 Civil 1369 is for damages caused to plaintiffs' property at 1524 Monsey Avenue in the City of Scranton. Plaintiffs allege that storm water runoff caused by a storm water drainage system owned by the City of Scranton has caused progressive damage to their home. This current action was filed November 2, 2005. An answer and new matter filed by the City of Scranton with prior counsel on November 18, 2005 did not raise a general release as an affirmative defense. The defendant is now attempting to amend the new matter to include the general release some five years later. Plaintiffs allege prejudice at this point of the proceedings.

In addition, plaintiffs also argue that the general release executed on January 23, 2002 which ended a similar case filed to this court at 95 Civil 4860 did not contemplate release of future damages. The plaintiffs also claim this current case is for a continuing and progressive nuisance caused by the failure of the defendant to undertake remedial measures to abate storm water runoff as allegedly promised in consideration for twenty-five thousand ($25,000.00) dollars and the general release of January 23, 2002. In short, the plaintiffs also allege that any release entered into was in consideration of the City of Scranton taking corrective measures to abate the insufficient storm water drainage system it owned and known colloquially as "Meadowbrook."

Against that backdrop, the instant motions have been thoroughly briefed and argued and are ripe for

disposition.

We will deal with them in seriatim as outlined above.

## II. Issues

A.   Should the defendant City of Scranton be allowed to amend its answer and new matter to include the affirmative defense of a general release executed on January 23, 2002 which ended a prior and similar action filed to this court at 95 Civil 4860?

B.   If the general release referenced above is allowed as an affirmative defense does it as a matter of law support defendant City of Scranton's motion for summary judgment and act as an absolute bar to this current action?

## III. Discussion

A.   *Defendant City of Scranton's Motion to Amend its New Matter to Include the Affirmative Defense of General Release.*

Pa. R.C.P. 1033 indicates that:

a party, either by filed consent of the adverse party *or by leave of court, may at any time* change the form of action, correct the name of a party or *amend his pleading.* The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action *or defense.* An amendment may be made to conform the pleading to the evidence offered or admitted. (Emphasis added)

Leave to amend a pleading lies within the sound discretion of the trial court, and the right to amend should

be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to the adverse party. *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (Pa. 1996).[1]

This is so because liberal amendment allows the court to secure a determination of cases on their merits. *Beckner v. Copeland Corp.*, 785 A.2d 1003 (Pa. Super. 2001), reargument denied, appeal denied 805 A.2d 518 (Pa. 2002).

Mere undue delay in and of itself is not grounds for disallowing an amendment. *Carpitella by Carpitella v. Consolidated Rail Corp.*, 533 A.2d 762 (Pa. Super. 1987). However, eleventh hour surprise or loss of witnesses could constitute the prejudice required to disallow an amendment. *Capobianchi v. BIC Corp.*, 666 A.2d 344 (Pa. Super. 1995), appeal denied 674 A.2d 1065 (Pa. 1996).

When we speak of prejudice, such "prejudice" must be more than mere detriment to the other party because any amendment requested certainly will be designed to strengthen the legal position of an amending party and correspondingly weaken the position of the adverse party. *Capobianchi v. BIC Corp.*, supra.

Even the mere fact that the adverse party has expended time and effort in preparing to try the case against amending party is not such prejudice as to justify denying the amending party leave to amend by asserting an affirmative defense which has substantial likelihood of success on the merits. *Capobianchi v. BIC Corp.*, supra.

---

1. An amendment is also disallowed if it is against a positive rule of law. *Burger v. Borough of Ingram*, 697 A.2d 1037 (Pa. Cmwlth. 1997).

Indeed, our appellate courts have allowed the amendment of an answer and new matter to include the affirmative defense of release on the equivalent of the trial court's own motion. *Holmes v. Lankenau Hospital*, 627 A.2d 763 (Pa. Super. 1993).

So it is against the backdrop of these principles that we must look at the particulars of this current case.

In the current matter, there is no "eleventh hour" element of surprise since this case, as of yet, has no firm assigned trial date. Moreover, while the wife plaintiff has passed away, Mr. Zummo is alive and indeed he was a party to the release at issue and knows of its existence. Prior counsel is also available, if necessary. Finally, the release at issue was requested several times in discovery. (i.e. at a deposition on February 14, 2006 and in interrogatories and a request for production of documents served on plaintiffs on May 2, 2008. See Exhibit "A" to defendant's motion to amend new matter).

Clearly, the type of "prejudice" and "surprise" necessary to overcome the liberal allowance of amendments as per Pa. R.C.P. 1033 does not exist in this case.

Therefore, we will allow defendant to amend its answer and new matter to include the affirmative defense of release and then also decide the impact of the general release on its merits. See *Beckner v. Copeland Corp.*, surpa.

B. *Defendant City of Scranton's Motion for Summary Judgment Based on the Affirmative Defense of General Release*

The standards for ruling on a motion for summary judgment are well defined'.

Pa. R.C.P. 1035.2(1) and (2) indicates in pertinent part that:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Under the rules, a motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

Finally, the court may grant summary judgment only where the right to such a judgment is clear and free from doubt. *Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186 (Pa. 2007); *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 962 A.2d 639 (Pa. 2009); *Pilchesky v. Gatelli*, 12 A.3d 430 (Pa. Super. 2011).

Keeping those principles in mind, we now examine the impact of the general release at issue.

As we indicated, this matter arises out of a complaint filed by plaintiffs, Salvatore Zummo and Dorothy Zummo, against the City of Scranton on November 2, 2005 and docketed at 2005 Civil 1369 (See Exhibit "A" to defendant's motion for summary judgment).

In their complaint, plaintiffs allege that the City of Scranton owned the storm water drainage system running through the plaintiffs' property, which intermittently, during times of moderate and heavy rainfall, caused damage to plaintiffs' property (Exhibit "A" to defendant's motion for summary judgment, paragraph 3).

Plaintiffs' allege that the City of Scranton has collected and channeled such waters in a concentrated fashion through plaintiffs' property, constituting a series of continuing trespasses and a continuing nuisance to the plaintiffs, resulting in structural damage, loss of value of plaintiffs' property and loss of use and enjoyment of property (Exhibit "A" to defendant's motion for summary judgment, paragraph 4).

Plaintiffs had previously filed a substantially similar civil action complaint against the City of Scranton on January 31, 1997 docketed at 95 Civil 4860 (See Exhibit "B" to defendant's motion for summary judgment). The allegations are virtually identical to the 2005 complaint.

In the 1997 complaint, as in the 2005 complaint, plaintiffs allege that there was a dangerous condition consisting of a storm drainage system owned, controlled and maintained by the City of Scranton adjacent to plaintiffs' property. Plaintiffs alleged in 1997, as they alleged in 2005, that the storm drainage system failed and channeled water onto their property causing damage and a

decrease in the fair market value of the property (Exhibit "B" to defendant's motion for summary judgment, paragraph 5).[2]

On January 23, 2002, plaintiffs signed a general release as to the City of Scranton (See Exhibit "C" to defendant's motion for summary judgment).

The terms of the release are clear and unambiguous. In the release, plaintiffs agreed to release and "forever discharge" the City of Scranton, its agents and employees "of and from *any and all claims*, including attorneys fees and/or costs, claims and demands whatsoever in law or equity; or otherwise, which against the said Releasees, Releasor now has *will have* or ever had arising out of the alleged incidents with regard to a storm drainage system called the 'Meadowbrook' and *any loss whatsoever and damage to their property* located at 1524 Monsey Avenue, Scranton, Pennsylvania (See Exhibit "C" to defendant's motion for summary judgment). (Emphasis added).

The release stated that it was "agreed that this is a full and final settlement by which Releasor is giving up every right which he/it now has, ever had or may ever have against any of the parties herein released by reason of the facts and circumstances set forth in the above-mentioned lawsuit" (See Exhibit "C", supra.). (Emphasis added).

Further, the 1997 complaint was settled for twenty-five thousand ($25,000.00) dollars and a praecipe for discontinuance and discontinuance was filed on January 28, 2002 settling, ending and discontinuing the 1995 action

---

2. Not to be lost in this discussion is the fact that identical 1999 e - pert reports as to damages from John J. Lavelle dated July 30, 1999 have been submitted in both actions (See Exhibit "D" to defendant's motion for summary judgment).

with prejudice (See Exhibit "E" to defendant's motion for summary judgment).

Most compelling is the fact the general release, which speaks for itself, contains no references to any preservation of any future claims by the plaintiffs against the City of Scranton for failure to implement or complete the Meadowbrook Flood Control Project in any set time frame or ever. This is a condition the parties could have freely bargained for in their release but did not. Absent that, we are bound by the all inclusive language and the finality of the general release at issue. There are no limitations in the release at issue in any time-line. It bars all claims against the City of Scranton including future claims such as the one at issue in the present case. The limiting interpretations of this release urged upon the court by plaintiffs are totally unsupported by the text and language of the release.

In Pennsylvania, it is well settled that the effect of a release is to be determined by the ordinary meaning of its language. *Taylor v. Solberg*, 566 Pa. 150, 778 A.2d 664 (Pa. 2001); *Republic Insurance Company v. Paul Davis Systems*, 543 Pa. 186, 670 A.2d 614 (Pa. 1995). The enforceability of settlement agreements is governed by principles of contract law. *Mazella v. Koken*, 559 Pa. 216, 739 A.2d 531 (Pa. 1999). Courts will enforce a settlement agreement if all its material terms have been agreed upon by the parties. *Century Inn, Inc. v. Century Inn Realty*, 516 A.2d 765 (Pa. Super. 1986). A settlement agreement will not be set aside absent a clear showing of fraud, duress, or mutual mistake. *Rago v. Nace*, 460 A.2d 337 (Pa. Super. 1983). No such allegations are made by plaintiffs in this case.

The absence of any limiting terms or language in a

general release was addressed by our Supreme Court when it instructed us that parties with possible claims may settle their differences upon such terms as are suitable to them. They may include or exclude terms, conditions and parties as they can agree. In doing so, they may yield, insist or reserve such right as they chose. If one insists that to settle, the matter must end then and forever, as between them, they are at liberty to do so. They may agree for reasons of their own that they will not sue each other or any one for the event in question. However, improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case. *Buttermore v. Aliquippa Hospital*, 522 Pa. 325, 561 A.2d 733 (Pa. 1989); *Pennsbury Village Associates, LLC v. Aaron McIntyre*, 608 Pa. 309, 11 A.3d 906, (Pa. 2011).

The practical logic behind this line of reasoning is obvious. If such an all-inclusive and unambiguous general release such as the one at issue in this case can be nullified or circumvented, then every written release and every written contract or agreement of any kind can also be nullified or circumvented. This would be so no matter how clear and pertinent and all-inclusive the language. Allowing such latitude would mean binding documents can be set aside whenever one of the parties has a change of mind or whenever there subsequently occurs a change of circumstances which were unforeseen, or there were after-discovered injuries, or the magnitude of a releasor's injuries was unexpectedly increased, or plaintiff made an inadequate settlement. See *Buttermore v. Aliquippa Hospital,* supra.; *Pennsbury Village Associates, LLC v. Aaron McIntyre,* supra, and *Emery v. Mackiewicz,* 429 Pa. 322, 240 A.2d 68 (Pa. 1968).

There is no doubt and it is absolutely clear that the 1995 case's general release in this case is unambiguous and it represents a comprehensive release of all claims against the City of Scranton including future claims for any storm water runoff damages attributable to the Meadowbrook storm water drainage system. There is no limiting language in the general release and as a matter of law it totally bars and precludes plaintiff from asserting their claims in this current action. The plaintiff-executed general release is also the law of this case. Said release governs the legal relationship between the parties both in the 1995 action as well as this current action.

Accordingly, we are bound to grant defendant's motion for summary judgment and dismiss this current action with prejudice.

An appropriate order follows.

## ORDER

And now, February, 2010, upon consideration of defendant's motion to amend its answer and new matter to include the affirmative defense of general release and defendant's motion for summary judgment based on the general release, it is hereby ordered and decreed:

(1) Defendant's motion to amend its answer and new matter to include the affirmative defense of general release is granted.

(2) Defendant's motion for summary judgment based on the general release is granted and plaintiffs' current complaint filed to the above term and number is dismissed with prejudice.