J. A20032/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RINALDO SANTARELLI AND CARMEL SANTARELLI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES SANTARELLI, | : | No. 377 MDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered February 14, 2017,
in the Court of Common Pleas of Lackawanna County
Civil Division at No. 2015-CIV-3296

BEFORE:  GANTMAN, P.J., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 26, 2018**

James Santarelli appeals from the February 14, 2017 order granting appellees' petition to enforce settlement agreement in this property dispute and ordering him to transfer his 1/3 interest in the parties' jointly owned property to appellees in accordance with their purported settlement agreement.  For the following reasons, we reverse.

The trial court summarized the relevant facts and procedural history of this case as follows:

> This matter arises out of an alleged incident that occurred on September 7, 2014, at the Property located at 906 Blakely Street, Jessup, PA 18343 (hereinafter the "Property"), in which [appellees] and [appellant] share joint ownership.  The Property consists of three (3) rental units, one (1) of which is occupied by [appellees].  [Appellees] own a 2/3 share and [appellant] a 1/3 share in the Property. On said

date, [appellees] allege that [appellant] physical[ly] attacked [appellee] Rinaldo Santarelli, [his 90-year old uncle,] resulting in bodily injury to his left arm and face. On May 12, 2015[,] [appellees] filed a Complaint, raising one (1) count of assault and battery and two (2) counts of intentional infliction of emotional distress resulting from the alleged incident occurring at the Property. On June 30, 2015, [appellant] filed his Answer and New Matter to [appellees'] Complaint.

On April 12, 2016, the parties appeared before the Magisterial District Judge Sean McGraw [(hereinafter, "Magistrate McGraw")] on cross-filed summary criminal actions. [Appellees] contend that at this hearing the parties agreed that they would obtain an appraisal of the Property to determine the fair market value, and that [appellant] would sell [appellees] his 1/3rd [sic] share in exchange for [appellees'] discontinuance of the present action. On July 11, 2016, J. Conrad Bosley prepared an appraisal of the Property, and concluded that the fair market value is $64,000.00. Subsequently, [appellees] allege that [appellant] refused to sell his 1/3 portion of the Property.

On September 23, 2016, [appellees] filed a Petition to Enforce Settlement, and a brief in support thereof. On October 11, 2016, [appellant] filed his Answer to [appellees'] Petition to Enforce Settlement, and subsequently filed a brief in opposition. A hearing on the Petition was held on February 13, 2017, and [the trial court] entered an Order granting [appellees'] Petition [on February 14, 2017]. The Order found that an oral agreement existed between the parties in which [appellant] would sell his 1/3rd [sic] interest in the Property to [appellees] for the amount determined by the fair market value appraisal of J. Conrad Bosley, in exchange for the parties withdrawing their cross filed private criminal complaints at the Magisterial District Judge and [appellees] discontinuing the present action. [Appellant] was ordered to transfer his 1/3rd [sic] interest in the Property to [appellees] in accordance with the agreement.

Trial court opinion, 3/24/17 at 1-2 (footnote and citation omitted).[1]

At the outset, it is important to note that the certified record does not contain a written transcript of the April 12, 2016 magisterial proceedings. As the trial court and no party cites to the notes of testimony from that proceeding, it appears that no transcript exists. Although it is not abundantly clear from the trial court's recitation of the factual history, a number of witnesses testified on behalf of appellees at the February 13, 2017 hearing, including appellees' son, Ronald Santarelli (hereinafter, "Son"); appellees' daughter, Deborah Bonda (hereinafter, "Daughter"); and appellee, Carmel Santarelli (hereinafter, "Wife"). (**See** notes of testimony, 2/13/17 at 3, 15, 19.) The trial court excused appellee, Rinaldo Santarelli, from testifying due to his age and the fact that he would offer the same testimony as Wife. (**Id.** at 21.) However, the record reflects that the only individuals who were actually present during the parties' purported oral agreement in Magistrate McGraw's back office were Chief of Police Joseph M. Walsh (hereinafter, "Chief Walsh"), the parties' attorneys, and the magistrate himself. Wife, Son, and Daughter all testified that they were not present in Magistrate McGraw's back office when the purported agreement was discussed, but only were made

---

[1] The trial court opinion does not contain pagination; for our discussion, we have assigned each page a corresponding number. Additionally, the trial court opinion inadvertently refers to appellant, James Santarelli, as "appellee" and appellees, Rinaldo and Carmel Santarelli, as "appellants." Accordingly, we have corrected these designations in the trial court's recitation of the facts.

aware of the terms of the agreement after appellees' counsel, Michael Perry, Esq. (hereinafter, "Attorney Perry"), spoke to them. (*Id.* at 9-12, 20.) Furthermore, appellees stipulated to these facts during the hearing. (*Id.* at 12, 29.)

Following entry of the order now on appeal, appellant did not file any post-trial motions.[2] Thereafter, on February 28, 2017, appellant filed a timely notice of appeal to this court. The trial court did not order appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b). The trial court filed its Rule 1925(a) opinion on March 24, 2017.

Appellant raises the following issues for our review:

1. DID THE TRIAL COURT COMMIT AN ERROR OF LAW IN DETERMINING THERE WAS A VALID AGREEMENT BETWEEN THE PARTIES ABSENT A MEETING OF THE MINDS ON ITS ESSENTIAL TERMS?

2. DID THE TRIAL COURT COMMIT AN ERROR OF LAW IN RELYING ON THE TESTIMONY OF WITNESSES WHO WERE NOT PRESENT AT THE TIME THE TERMS OF THE AGREEMENT WERE REACHED AND IGNORING THE TESTIMONY OF THE ONLY INDEPENDENT WITNESS WHO WAS PRESENT FOR THE DISCUSSION?

---

[2] We note that appellant's failure to file post-trial motions in accordance with Pa.R.C.P. 227.1 does not result in waiver, as such motions are not required from an order granting a petition to enforce a settlement agreement. *See Kramer v. Schaeffer*, 751 A.2d 241, 244 (Pa.Super. 2000) (concluding that a trial court's decision on a motion to enforce a settlement is not the type of proceeding from which post-trial motions are required).

> 3. DID THE TRIAL COURT COMMIT AN ERROR OF LAW IN BASING THE EXISTENCE OF AN AGREEMENT ON THE PARTIES' FAILURE TO TAKE FURTHER ACTION AT THE MAGISTRATE'S OFFICE WHEN THE EVIDENCE PRESENTED INDICATES THAT THE MAGISTRATE HEARING WAS CONTINUED UNTIL RESOLUTION OF THE PETITION TO ENFORCE THE SETTLEMENT AGREEMENT?

Appellant's brief at 4-5.

Our standard of review of a trial court's decision to grant a petition to enforce a settlement agreement is well settled.

> When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence. The prevailing party is entitled to have the evidence viewed in the light most favorable to its position. Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous.

**Salsman v. Brown**, 51 A.3d 892, 893-894 (Pa.Super. 2012) (citation omitted).

Appellant first contends that the trial court erred in concluding that an enforceable agreement existed because the parties never reached "a meeting of the minds" as to the essential terms of the agreement. (Appellant's brief at 9-10.) In support of this contention, appellant avers that the trial court committed an error of law by disregarding the testimony of the only independent witness, Chief Walsh, who was present for the discussion in

- 5 -

Magistrate McGraw's back office on April 12, 2016. (**Id.** at 11-12.) For the following reasons, we agree.

Principles of contract law govern the enforceability of settlement agreements, and as with any contract, "[c]ourts will enforce a settlement agreement if all its material terms have been agreed upon by the parties." **Pennsbury Vill. Assocs., LLC v. Aaron McIntyre**, 11 A.3d 906, 914 (Pa. 2011) (citations and internal quotation marks omitted). Generally, "[w]here a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. This is true even if the terms of the agreement are not yet formalized in writing." **Mastroni-Mucker v. Allstate Ins. Co.**, 976 A.2d 510, 518 (Pa.Super. 2009) (citations omitted), **appeal denied**, 991 A.2d 313 (Pa. 2010). Thus, in order to be valid and enforceable, there must exist "an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)." **Id.** (citation omitted).

Instantly, the trial court concluded that the parties entered into a valid and enforceable oral agreement whereby appellant agreed to sell his 1/3 share of the property to appellees at the appraised fair market value, and in return, appellees would discontinue their pending civil action against appellant; both

parties also agreed to withdraw their cross-filed private criminal complaints.[3] (**See** trial court order, 2/14/17 at ¶ 2; certified record at # 21.) In support of this conclusion, the trial court relied on the testimony of Wife, Son, and Daughter at the February 13, 2017 hearing, and summarized this testimony in its opinion. (**See** trial court opinion, 3/24/17 at 3-4.)

Upon review, we conclude that the trial court erred in concluding that a valid and enforceable oral settlement agreement existed between the parties. The record reflects that the trial court's decision to grant enforcement of the settlement is not supported by competent evidence, and its opinion mischaracterizes the testimony of appellees' three witnesses. As noted, the three witnesses proffered by appellees – Son, Daughter, and Wife – all acknowledged that they were not present for the actual discussion of the terms of the purported agreement in Magistrate McGraw's back office on April 12, 2016, but rather relied on the recitation of the terms by counsel. (**See** notes of testimony, 2/13/17 at 9-11, 16, 20.) Appellees further stipulated to this fact during the hearing:

> THE COURT: I think the foundation has been laid. This witness[, Son,] was never in the back room, which was the office of the –
>
> [Attorney Perry]: Agreed.
>
> THE COURT: -- MDJ

---

[3] To the extent this matter concerns the affirmative defense of the Statute of Frauds, also known as the Pennsylvania Uniform Written Obligations Act, 33 P.S. §§ 1-8, we decline to address this issue because neither party properly raised this issue in their appellate briefs.

[Attorney Perry]:  We'll stipulate to that, Your Honor.

. . . .

Q.    In the meeting in [Magistrate McGraw's] office, was [Wife] in that meeting?

A.    No.

Q.    Was [Daughter] in that meeting?

A.    No.

[Attorney Perry]:  Your Honor, I object.  We stipulated that they were not back there.

THE COURT:  Stipulated to.

*Id.* at 12, 29.

On the contrary, Chief Walsh, who was present for the discussion in Magistrate McGraw's office, testified that he did not recall appellant agreeing to sell his portion of the property to appellees, only that the parties would hire an appraiser and split the costs and that once that was completed, one of the parties would buy the other out.  (*Id.* at 25-26.)  Notably, Chief Walsh's recollection of the April 12, 2016 discussion was that appellant **did not** want to sell his portion of the property to appellees, which Chief Walsh testified to multiple times during both direct and cross-examination:

Q.    Do you recall my client, [appellant,] at any point in time, agreeing that he was going to sell his interests and the [appellees] would live there in the future?

A.    No.

. . . .

> Q.   Do you recall [appellant] saying he didn't want to [sell his portion of the Property to appellees]?
>
> A.   I do recall that, yes.
>
> Q.   Okay.  So, then you must recall me saying it if you recall him saying he didn't want to do it.
>
> A.   I recall [appellant] saying, on many occasions, the he did not want to sell.

. . . .

> Q.   And you don't remember [appellant] agreeing that he was going to have [appellees] buy him out?  You don't remember any of that?
>
> A.   No, I don't.  I remember [appellant] saying that he did not want to sell.
>
> Q.   When did he say that?
>
> A.   On many different occasions.

*Id.* at 26-28.  Lastly, because the certified record does not contain a written transcript of the April 12, 2016 magisterial proceedings, including the discussion of the purported agreement that took place in Magistrate McGraw's back office, the record before us fails to support the trial court's conclusions.

Based on the forgoing, we reverse the February 14, 2017 order of the trial court granting appellees' petition to enforce settlement.[4]

Order reversed.  Case remanded.  Jurisdiction relinquished.

---

[4] In light of our disposition, we need not address appellant's remaining claim of trial court error.  (*See* appellant's brief at 13.)

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>03/26/2018</u>