IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Auto Shower II, Inc.,                    :
                 Appellant        :
           v.                      :      No. 1165 C.D. 2022
                                :      Argued:  October 10, 2023
                                :
Mark Darius Juszczak, Katerina P.        :
Juszczak, Borough of Wilkinsburg,        :
and County of Allegheny                  :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY SENIOR JUDGE LEAVITT                    FILED:  November 17, 2023


        Auto Shower II, Inc. appeals an order of the Court of Common Pleas of Allegheny County (trial court) that refused to strike restrictive covenants placed upon the title to a property in conservatorship, without advance notice to the conservator or approval of the trial court supervising the conservatorship.  Although the trial court's order is interlocutory, this Court agreed to hear the appeal.  For the reasons that follow, we reverse the trial court's interlocutory order and remand the matter with instructions to grant the motion to strike restrictive covenant.

        This case has its genesis in a 2018 petition for the appointment of a conservator of property located at 421 Ross Street, Wilkinsburg, Pennsylvania (Property).  Filed under the Abandoned and Blighted Property Conservatorship Act (Conservatorship Act),[1] the petition described the Property as meeting the conditions

---

[1] Act of November 26, 2008, P.L. 1672, *as amended*, 68 P.S. §§1101-1111.  It states:

    The General Assembly finds and declares that:

    (1) Pennsylvania's older communities are important to the Commonwealth's economic health by providing a focal point for businesses and services and to this Commonwealth's quality of life with its rich history and diverse communities.

for conservatorship because it was abandoned and "unfit for human habitation, occupancy or use[.]" Amended Petition ¶36; Reproduced Record at 82a (R.R. __). Specifically, the front of the house, facing the street, had shingles and brick façade falling off; boarded up windows; overgrown brush on the front steps; and a missing gas meter, indicating a lack of heat. *Id*. ¶32; R.R. 81a. The rear of the house had broken windows, an overgrowth of weeds and brush, and debris scattered on the back porch. *Id*. ¶34; R.R. 82a. Further, the roof was bulging and missing shingles. *Id*. Finally, "[t]he presence of vermin and the accumulation of debris, uncut vegetation [and] physical deterioration of the structure and grounds [] created potential health and safety hazards." *Id*. ¶35; R.R. 82a.

---

However, many older communities suffer from blighted properties that have been abandoned by their owners.

(2) Many citizens of this Commonwealth are adversely affected by abandoned and blighted residential, commercial and industrial properties, including those citizens who live in proximity to such substandard buildings, as well as those who own property in the vicinity of such buildings.

(3) Substandard, deteriorating and abandoned residential, commercial and industrial structures are a public safety threat and nuisance and their blighting effect diminishes property values in the communities in which these properties are located.

(4) If these buildings are not rehabilitated, they are likely to remain abandoned and further deteriorate, resulting in increased costs to the Commonwealth, municipality and taxpayers to secure and ultimately demolish them.

(5) *Providing a mechanism to transform abandoned and blighted buildings into productive reuse is an opportunity for communities to modernize, revitalize and grow, and to improve the quality of life for neighbors who are already there.*

(6) If the owner of a residential, commercial or industrial building fails to maintain the property in accordance with applicable municipal codes or standards of public welfare or safety, it is in the best interest of the Commonwealth, the municipality and the community for the court, pursuant to the provisions of this act, to appoint a conservator to make the necessary improvements before the building deteriorates further and necessitates demolition, resulting in the removal of the building from the housing supply or *prohibiting future productive economic use*.

Section 2 of the Conservatorship Act, 68 P.S. §1102 (emphasis added).

2

The appellant, Auto Shower II, Inc. (Auto Shower), owns and operates a car wash business located within 10 feet of the Property. In its amended petition for the appointment of a conservator, Auto Shower averred that it had the financial resources and experience to rehabilitate the Property. The petition stated that, if named conservator, Auto Shower would initiate a three-phase plan to "allow the [P]roperty to add economic value to the residen[ces] and business[es] [] in the area." Amended Petition ¶48; R.R. 84a.

The trial court determined that the Property met the conditions for a conservatorship and appointed Auto Shower as conservator, effective August 8, 2018. However, the trial court did not rule on the petition's proposed abatement plan to demolish the existing building on the Property and replace it with an expanded parking lot and a bank of car vacuum cleaners for Auto Shower's adjacent car wash business. In response, the owners of the Property, Mark Darius Juszczak and Katerina P. Juszczak (Owners), appealed the trial court's conservatorship order to this Court. In an unreported opinion, we dismissed Owners' appeal for the stated reason that they had failed to file post-trial motions, and, in any case, the trial court's determination was fully supported by the record.[2]

On November 25, 2019, four days after this Court dismissed Owners' appeal, Owners executed an Indenture that conveyed the Property from themselves to themselves, for $1.00, and imposed nine restrictive covenants in a new deed.[3]

---

[2] *See Auto Shower II, Inc. v. Juszczak* (Pa. Cmwlth., No. 1611 C.D. 2018, filed November 21, 2019).

[3] The covenants included, *inter alia*, a prohibition on accumulation of trash or debris; a prohibition on subdivision of the premises without Owners' express consent; a prohibition on animals other than household pets; a prohibition on placing billboards on the premises; and a prohibition of any use other than as a single-family residential dwelling. The restrictions were to run as covenants with the land for 25 years from the date of the Indenture. Indenture at 2-3; R.R. 211a-12a.

3

R.R. 210a-14a. The new deed, or Indenture, was recorded on December 5, 2019. One restrictive covenant provides that "[t]he premises shall not be used for any purpose other than a single-family residential dwelling." R.R. 211a.

The trial court scheduled a hearing on Auto Shower's proposed abatement plan for the Property. However, before the hearing, Owners and Auto Shower entered into a Settlement Agreement and Mutual Release (Settlement Agreement). Under the Settlement Agreement, Owners agreed to sell the Property to Auto Shower for $10,000, and Auto Shower agreed to give Owners a release that stated as follows:

> Auto Shower . . . now and forever, fully and finally, release, acquit and discharge [Owners] . . . from, and for any and all claims, demands, rights of action, causes of action, lawsuits . . . claims for costs . . . or requests for relief of any character whatsoever, legal or equitable, that are known, or should have been known from the exercise of reasonable diligence, as of the date of this [Settlement] Agreement, and arising out of or relating in any way to the Action, the Deed, and/or the Subject Property.

Settlement Agreement at 2; R.R. 174a. On June 20, 2020, Owners conveyed the Property to Auto Shower by quit claim deed. R.R. 217a-21a. The Settlement Agreement obligated Auto Shower to file a praecipe to terminate the conservatorship of the Property upon completion of the transaction, but it has not done so.

On November 16, 2020, Auto Shower filed a motion to strike restrictive covenant. On June 17, 2021, the trial court held a remote hearing on Auto Shower's motion. On June 29, 2022, the trial court directed the parties to provide additional briefing. On August 8, 2022, Auto Shower filed its brief, and Owners filed a brief in opposition to the motion to strike, as well as a motion to enforce settlement in order to compel Auto Shower to discontinue the conservatorship.

4

On August 16, 2022, after a second hearing, the trial court issued an order denying Auto Shower's motion to strike for the stated reason that the Conservatorship Act places no limits on "owners that would prohibit them from transferring or restricting their property interest while the property is subject to conservatorship." Trial Court Order, 8/16/2022, at 1; R.R. 185a. The trial court did not rule on Owners' motion to enforce the Settlement Agreement.

On September 7, 2022, Auto Shower requested the trial court to certify its order for an interlocutory appeal. Its application stated that "resolution of the issue of whether the restrictive covenant is valid or if it is void . . . is the only issue remaining in this matter before the conservatorship is terminated." Application for Certification ¶19; R.R. 189a. On October 6, 2022, the trial court issued an amended order certifying its order to deny Auto Shower's motion to strike for an immediate appeal to this Court. The trial court stated that its "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal . . . may materially advance the ultimate termination of this matter," in accordance with 42 Pa. C.S. §702(b). Trial Court Order, 10/6/2022; R.R. 194a.

On February 6, 2023, this Court granted Auto Shower's petition for permission to appeal the issues set forth in its petition as follows:[4]

> 1. Whether the trial court erred when it denied [Auto Shower's] Motion to Strike Restrictive Covenant; and
>
> 2. Whether the trial court erred when it found that, under the Abandoned and Blighted Property Conservatorship Act, Act of November 26, 2008, P.L. 1672, *as amended*, 68 P.S. §§1101-1111 (Act 135), there are no limits placed on owners that would

---

[4] The Borough of Wilkinsburg and County of Allegheny are referenced in the caption. However, this Court issued an order precluding them from participating in oral argument, as a result of their failure to file briefs.

prohibit them from transferring or restricting their property interest while the property is subject to conservatorship.

Court Order, 2/6/2023.

The central issue in this case is whether the Conservatorship Act allows owners of a property subject to a court's conservatorship order to restrict the future development of their property without the agreement of the conservator or the approval of the conservatorship court.[5] Auto Shower argues that the trial court erred in holding that the Conservatorship Act places no such limits on owners of property in conservatorship. Owners respond that the trial court correctly construed the Conservatorship Act and that "the law governing this Court's review [here] is that of contract[,]" not conservatorship. Owners Brief at 8.

We begin our analysis with a review of the applicable law.

Section 6 (a) and (b) of the Conservatorship Act, entitled "Powers and duties of conservator," states in relevant part as follows:

> (a) Full powers and duties.-- *The conservator shall have all powers and duties necessary or desirable*, from time to time, *for the efficient operation, management and improvement of the building* in order to bring it into compliance with all municipal building and housing code requirements *and to fulfill the conservator's responsibilities under this act*. Such powers and duties shall include, but not be limited to, the power to:
>
> > (1) Take possession and control of the building, appurtenant land and any personal property of the owner used with respect to the building, including any bank or operating account for the building.

---

[5] Our review determines whether the trial court abused its discretion or committed an error of law necessary to the outcome of this case. *In re Conservatorship Proceeding In Rem by Germantown Conservancy, Inc.*, 995 A.2d 451, 459 n.6 (Pa. Cmwlth. 2010). The proper interpretation of a statute is a question of law. Accordingly, our standard of review is *de novo* and our scope of review is plenary. *Franks v. State Farm Mutual Automobile Insurance Company*, 292 A.3d 866, 871 n.9 (Pa. 2023).

* * * *

(10) Engage and pay legal, accounting, appraisal and other professionals to aid the conservator in the conduct of the conservatorship.

* * * *

(13) *Sell the building in accordance with section 9.*

(14) Exercise all authority that an owner of the building would have to improve, maintain and otherwise manage the building, including the extent to which rehabilitation will satisfy the goals of the conservatorship.

(b) Affirmative duty.--While in possession of the building, the conservator shall:

(1) Maintain, safeguard and insure the building.

* * * *

(3)(i) *Develop a final plan for abatement of the conditions which caused the petition to be granted or, if no such feasible final plan can be developed, to develop alternatives, including the closing, scaling or demolition of all or part of the building.*

(ii) When the building has been designated a historic property, rehabilitate architectural features that define the property's historic character.

(iii) When demolition of a property in a historic district is necessary, design any replacement construction on the site to comply with applicable standards under current law.

(4) *Implement the final plan referred to in paragraph (3) upon approval by the court.*

(5) Submit a status report to the court and parties to the action annually or more frequently as the court may deem appropriate . . . .

68 P.S. §1106(a), (b) (emphasis added).

7

Section 7(a), entitled "Ownership of property," addresses the ownership rights of the conservator and the rights of the property owner during conservatorship. It states:

> (a) A *conservator appointed* under Section 5 [of the Conservatorship Act] shall be deemed to *have an ownership interest in and legal control of the property* for the purposes of filing plans with public agencies and boards, seeking and obtaining construction permits and other approvals and submitting applications for financing or other assistance to public or private entities.

68 P.S. §1107(a) (emphasis added). Nevertheless, the owner retains liability for, *inter alia*, taxes. Section 7(b) of the Conservatorship Act, 68 P.S. §1107(b).

Section 9(a) of the Conservatorship Act addresses the sale of property in conservatorship. It states:

> If a property subject to conservatorship is sold by the owner or foreclosed upon by a lienholder or if any interest therein is transferred, such sale, foreclosure or *transfer shall be subject to the conservatorship*.

68 P.S. §1109(a) (emphasis added). With respect to a sale by the conservator, Section 9(b) further provides as follows:

> Upon application of the conservator, the court may order the sale of the property if the court finds that:
>
> > (1) Notice and an opportunity to provide comment to the court was given to each record owner of the property and each lienholder.
> >
> > (2) The conservator has been in control of the building for more than three months and the owner has not successfully petitioned to terminate the conservatorship under section 10.
> >
> > (3) The terms and conditions of the sale are acceptable to the court, and the buyer has a reasonable likelihood of maintaining the property.

8

68 P.S. §1109(b).

Auto Shower argues that the trial court erred in its construction of the Conservatorship Act. Its holding that the statute places *no limits* on the ability of an owner of property in conservatorship to restrict the property's future use cannot be reconciled with the statutory scheme, which gives the conservator "legal control of the property." Section 7(a) of the Conservatorship Act, 68 P.S. §1107(a).

The Indenture recites that the Grantors, *i.e.*, Owners, for the sum of $1.00, did "grant, bargain, *sell*, alien, release and confirm" to the Grantees, *i.e.*, Owners, their interest in the Property. Indenture at 1; R.R. 210a. This sale subjected the Property to a covenant, enforceable by Grantees and their heirs, that the Property "shall not be used for any purpose other than a single[-]family" residence for 25 years. R.R. 211a-12a. Auto Shower contends that Owners had no power to so encumber the Property without the consent of the conservator. Specifically, the owner cannot revise the deed "with the effect that it prevents the conservator's plan to rehabilitate and use the property[.]" Auto Shower Brief at 16.

Auto Shower further argues that

[t]he intervention of an interested party as conservator is to correct the damage caused by the neglect of the property owner. To then provide the same owner who allowed a property to reach such a dilapidated condition that necessitated a conservatorship the *unilateral power to make decisions regarding the future use of the property without the consent of the conservator is not consistent with the [Conservatorship] Act or the concept of a conservatorship*.

Auto Shower Brief at 17 (emphasis added). The purpose of the *lis pendens* requirement in the Conservatorship Act is to notify the world that the subject property is in conservatorship and, thus, subject to court supervision. Section 4(c)

9

of the Conservatorship Act, 68 P.S. §1104(c).[6] Stated otherwise, Section 4(c) confirms that the owner of a property in conservatorship has limited authority to act with respect to that property.

In response, Owners argue that the trial court never approved Auto Shower's abatement plan, let alone the expansion of Auto Shower's car wash business onto the Property. Nowhere does the Conservatorship Act state that an owner cannot sell property in conservatorship. By contrast, Section 9(b) requires the conservator to obtain court approval before it can sell a property in conservatorship. 68 P.S. §1109(b). In any case, Owners have sold the Property to Auto Shower, and this sale has mooted "the need for judicial oversight of [the Property.]" Owner Brief at 9.

Auto Shower's proposed abatement plan had been filed with the trial court, thereby alerting Owners (and the world) to the conservator's intentions. It was only after Owners' appeal was dismissed by this Court that Owners executed the Indenture, on advice of their counsel. Hearing Transcript, 6/17/2021, at 11; Supplemental Reproduced Record at 138b. Auto Shower contends that the sole purpose of Owners' restrictive covenant was to interfere with the abatement plan still pending before the trial court. This is a reasonable inference. However, it is not dispositive of the motion to strike. Rather, the statute is dispositive. The question raised by the Conservatorship Act appears to be one of first impression, *i.e.*, the meaning of "subject to conservatorship" in Section 9(a) of the Conservatorship Act. 68 P.S. §1109(a).

---

[6] Section 4(c) of the Conservatorship Act states:

> Notice of lis pendens.--The petitioner shall file a notice of lis pendens in the office of the recorder of deeds for the county in which the property is located.

68 P.S. §1104(c).

10

The Conservatorship Act provides that a property "subject to conservatorship" remains in conservatorship notwithstanding its sale or transfer. 68 P.S. §1109(a). Further, it is the conservator that has the power to bring the property "into compliance with all municipal building and housing code requirements," with the specific power to take "possession and control of the building [and] appurtenant land[.]" 68 P.S. §1106(a)(1). An owner's interference with the future use of a property in conservatorship is antithetical to the conservator's control of the building and "appurtenant land." 68 P.S. §1106(a)(1). A change in or limit to the property's future use necessarily requires the involvement of the conservator and the court.

Where a statute is unclear or ambiguous, the canons of statutory construction may be employed. *See Township of Washington v. Township of Upper Burrell*, 184 A.3d 1083, 1088-89 (Pa. Cmwlth. 2018). The Statutory Construction Act of 1972 states that where the words are not explicit, the "intention of the General Assembly may be ascertained by considering . . . [t]he occasion and necessity for the statute . . . [and] the consequences of a particular interpretation." 1 Pa. C.S. §1921(c)(1), (6).[7] In this regard, the legislature has directed that "the General

---

[7] Section 1921 states:

> (a) Object and scope of construction of statutes.--The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
>
> (b) Unambiguous words control construction.--When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
>
> (c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> > (1) The occasion and necessity for the statute.
> >
> > (2) The circumstances under which it was enacted.
> >
> > (3) The mischief to be remedied.

Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. §1922(1).[8] The occasion for the Conservatorship Act is "to transform abandoned and blighted buildings into productive reuse . . . and to improve the quality of life for neighbors who are already there." 68 P.S. §1102(5). To divorce the conservator, or the court, from the decision to restrict the future use of a blighted property produces an unreasonable result. 1 Pa. C.S. §1922(1).

We reject the trial court's construction of Section 9(a) of the Conservatorship Act because it effectively reads "subject to the conservatorship" out of the statute. It would mean that the owner is free to restrict the use of the conserved property to, say, a crematorium, or any peculiar use, regardless of whether it is compatible with the neighborhood or desired by the marketplace. At a minimum, it was Owners' burden to show that restricting the use of the Property to a single-family dwelling for 25 years would not impede its return to a "productive reuse." 68 P.S. §1102(5). However, Owners offered no such evidence at the hearing on the motion to strike.

---

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921.

[8] Section 1922(1)-(2) states, in part:

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

1 Pa. C.S. §1922(1)-(2).

12

The conservatorship proceeding had not terminated when Auto Shower filed its motion to strike. We reject Owners' contention that its sale of the Property to Auto Shower has "mooted" the conservatorship. The Conservatorship Act expressly provides that a sale does not affect the conservatorship. Further, a termination of a conservatorship can be done only by request and court order. The Conservatorship Act states as follows:

> Section 10. Termination of conservatorship.
>
> Upon request of a party in interest or the conservator, the court may order the termination of the conservatorship if it determines:
>
>> (1) the conditions that were the grounds for the petition and all other code violations have been abated or corrected, the obligations, expenses and improvements of the conservatorship, including all fees and expenses of the conservator, have been fully paid or provided for and the purposes of the conservatorship have been fulfilled;
>>
>> (2) the owner, mortgagee or lienholder has requested the conservatorship be terminated and has provided adequate assurances to the court that the conditions that constituted grounds for the petition will be promptly abated, all obligations, expenses and improvements of the conservatorship, including all fees and expenses of the conservator, have been fully paid or provided for and the purposes of the conservatorship have been fulfilled;
>>
>> (3) the building has been sold by the conservator and the proceeds distributed in accordance with section 9(d); or
>>
>> (4) the conservator has been unable, after diligent effort, to present a plan that could be approved under section 6(b)(3) or to implement a previously approved plan or, for any reason, the purposes of the conservatorship cannot be fulfilled.

68 P.S. §1110. A sale of the conserved property to the conservator is not a stated ground for termination of the conservatorship.

13

The Conservatorship Act did not require Owners to obtain the trial court's approval to sell the Property, either to themselves or to Auto Shower. Section 9(a) of the Conservatorship Act, 68 P.S. §1109(a). However, imposition of a restrictive covenant on the future use of the conserved Property was a matter for the trial court's approval in light of the ongoing conservatorship proceeding.

Owners contend, in the alternative, that this matter is governed by contract law, not the Conservatorship Act. Before Auto Shower took title to the Property, Owners notified Auto Shower's principal, Ronald Buchanan, of the restrictive covenants in the deed. Under the Settlement Agreement of June 10, 2020, Auto Shower was aware, or by reasonable due diligence should have been aware, of the new covenants.[9] Owners Brief 6-7. Owners assert that the sale price "was only acceptable because of the limitations they imposed" upon the Property. Owners Brief at 14. By accepting the terms of the settlement and the Property "as is," Auto Shower agreed to the covenants and cannot now undo them without violating the settlement.

This Court has explained that "[i]f courts were called on to re-evaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. Settlement agreements are enforced according to principles of contract law." *Hydrojet Services, Inc. v. Reading Area Water Authority*, 220 A.3d 1199, 1204 (Pa. Cmwlth. 2019) (quoting *Mastroni-Mucker v. Allstate Insurance Company*, 976 A.2d 510, 518 (Pa. Super. 2009) (internal citations omitted)). Our Supreme Court has pronounced that "[c]ourts will enforce a settlement agreement if all its material terms have been agreed upon by the parties. A settlement agreement will not be set

---

[9] Owners state that they sent an e-mail to Auto Shower on December 14, 2019, announcing the restrictive covenants. Further, the deed was recorded on December 5, 2019. Auto Shower did not do a title search prior to closing on the sale.

aside absent a clear showing of fraud, duress, or mutual mistake." *Pennsbury Village Associates, LLC v. Aaron McIntyre*, 11 A.3d 906, 914 (Pa. 2011) (internal citations omitted).

Both Auto Shower and Owners were bound by the terms of the Conservatorship Act during the conservatorship of the Property. They lacked the authority, by agreement or otherwise, to divest the conservatorship court of its jurisdiction over the Property, which includes the court's review of proposed limitations on the Property's future use. Simply, the parties cannot agree to contract terms that violate statutory law. *Sayles v. Allstate Insurance Company*, 219 A.3d 1110, 1123 (Pa. 2019). We reject Owners' argument that the Settlement Agreement is in any way dispositive of their ability to restrict the Property's future use.[10]

For all these reasons, we reverse the trial court's order and remand to the trial court to enter an order granting Auto Shower's motion to strike restrictive covenant.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Wojcik did not participate in the decision in this case.

---

[10] The Settlement Agreement may be dispositive of purely private issues that are ancillary to the restrictive covenant, such as the conservator's ability to seek fees from Owners for work done during the conservatorship.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Auto Shower II, Inc.,          :
              Appellant     :
       v.           :    No. 1165 C.D. 2022
                     :
Mark Darius Juszczak, Katerina P.  :
Juszczak, Borough of Wilkinsburg,  :
and County of Allegheny     :

# O R D E R

AND NOW, this 17th day of November, 2023, the October 6, 2022, order of the Court of Common Pleas of Allegheny County (trial court), in the above-captioned matter, is REVERSED. This matter is REMANDED to the trial court to enter an order granting Auto Shower II, Inc.'s motion to strike restrictive covenant.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita